[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The State of Connecticut has brought this action against Herman Lee Williams of the City of Fayetteville, North Carolina, seeking to enforce a support order entered in the Superior Court of North Carolina under the Uniform Reciprocal Enforcement Support Act (URESA). The defendant is the father of seven children, including one, Vivian Sykes, now deceased, all of whom were recipients of state aid under the Aid to Families with dependant children (AFDC) from July 1, 1967 through March 31, 1986, which assistance is continuing.
The present action arises out of the circumstance that the defendant became a beneficiary of the estate of his daughter, Vivian Sykes, whose estate instituted a wrongful death action which was settled for $85,000. Before the death action was settled, counsel for the estate, Hugh Lavery, sought to determine from one, June Thomas of the Bureau of Collection Services, what amount the defendant would be able to keep considering that at the time, June Thomas advised that the defendant's distributive share of his daughter's estate was subject to a lien, pursuant to C.G.S. 17-83e and 17-83f in the amount of $126,475.88. In accordance with C.G.S. 17-83e and 17-83f, counsel was advised by both June Thomas and the Attorney General's Office, that the defendant would be allowed to retain $10,643.45, one-half of his inherited share.
It is the defendant's claim that he relied on this information in agreeing to settle the wrongful death action.
By letter dated March 3, 1987, the Attorney General's Office by Assistant Attorney General Anita Satti, expressed its agreement that the final accounting in Sykes estate reflect that the defendant's distributive share, would be $10,465.35. Much to the consternation of both the defendant and his attorney, Hugh Lavery, under date of March 5, 1987, CT Page 1882 Assistant Attorney General Anita Satti wrote to Lavery's law office, noticing a lien against the defendant's distributive share based on the outstanding order of support against the defendant in the North Carolina Court, which it was claimed, had been outstanding since 1978, and, upon which there was now an arrearage in excess of $23,000.00.
The defendant has filed four special defenses.
The first special defense alleges in a general way that the defendant is entitled to his one-half of distributive share of his daughter's estate.
The second special defense alleges a breach of agreement on the part of the State.
The third special defense alleges estoppel.
The fourth special defense alleges accord and satisfaction.
Frustrating though it might be to the defendant at the sudden disappearance of his expected windfall and sympathetic though the court might be toward such frustration, the court is unable to afford relief, legally, equitably, or otherwise.
The first special defense alleges that the defendant is entitled to one-half of his distributive share of his daughter's estate. This of course, begs the question. The issue in the case is whether this is so.
The second special defense alleges breach of agreement on the part of the state. The evidence bearing on this allegation was presented in an unusual manner. Counsel for the respective parties, by agreement, were allowed to testify in narrative fashion without withdrawing as counsel. Counsel for the defendant, Hugh Lavery, testified that in conversation with Anita Satti, Assistant Attorney General, it was agreed that the state would accept one-half of the defendant's distributive share pursuant to C.G.S. 17-83f. Anita Satti recalled no such conversation and there was no reflection of such in her file notes. Under such circumstances, the court is unable to find that the defendant has sustained his burden of proof under the second special defense.
Much of the defendant's argument hinges on the interpretation of C.G.S. 17-83e and 17-83f. Section 17-83f (b) provides that:
 "In the case of an inheritance of an estate by a beneficiary of aid under this chapter. CT Page 1883 . . fifty percent of the assets of the estate payable to the beneficiary, or the amount of such assets equal to the amount of assistance paid, whichever is less, shall be assignable to the state for payment of the amount due under Section 17-83e."
Section 17-83e provides that the estate shall have a claim against any beneficiary of aid who has or acquires property of any kind, subject to the provisions of section 17-83f. Standing alone, this language would seem to support the defendant's position that only fifty percent of this distributive share of his daughter's estate was subject to the state's claim. Section 17-83e goes on, however, to add that, "the State of Connecticut shall have a lien against property of any kind or interest in any property, estate or claim of any kind of the parents of an aid to dependent children, in addition and not in substitution of its claim, for amount owing under any order of support of any court. . . ., including any arrearage under such order . . ."
The language is clear, at least to this court, that the phrase, "in addition" means that the state's lien for any amount owing under a court order of support is not subject to the fifty percent limitation of 17-83f.
The defendant's third special defense alleges estoppel.
The short answer to this is that generally estoppel does not lie against the state. State v. Metrusky, 140 Conn. 26,30. Exceptions have been recognized in cases such as Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 146, where the state agent was clothed with statutory authority to buttress his actions. This is not such a case. Even were the court to recognize that there was an agreement to subject the court to support order to the limitations of 27-83f, there can be no waiver of the rights of the state nor would the state be estopped from asserting its rights. McGowan v. Administrator, 153 Conn. 691, 694. The defendant, further, relies on the Kimberly-Clark case, supra, for a claim that estoppel should be invoked against the state when special circumstances make it highly inequitable or oppressive not to so estop. This hardly seems to the court to be such a case. The defendant knew that he owed substantial amounts for support of his children and was aware of the court order for support, which was ignored except for nominal payments. The court finds nothing inequitable or oppressive to compel him to comply with his statutory obligation.
The defendant's final special defense alleges accord and CT Page 1884 satisfaction. As was stated in McCune v. Revlon, 151 Conn. 107,109, "An accord is an agreement; but there is no agreement without a consideration; and receiving part only, is no consideration not to collect the rest; it is a "nude pact". It is only when a claim is in dispute and unliquidated, any sum, given and received in settlement of the dispute, is a sufficient consideration. McCune v. Revzon, supra. There was no dispute regarding the arrearage owed under the court order. As a matter of fact, the entire matter of the support order did not arise until the hearing in the Stamford Probate Court on the Application to Compromise a doubtful and disputed claim, a considerable time after the arrangements had been made to provide for fifty percent payment to the state of the defendant's distributive share, in accordance with 17-53f.
The issues are found in favor of the plaintiff and judgment may enter according.
BELINKIE State Trial Referee